UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES A. RIVENBURG,

                Plaintiff,

      V.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**REPORT AND RECOMMENDATION**

09-CV-755
(NAM/VEB)

---

## I. INTRODUCTION

In April of 2007, Plaintiff James A. Rivenburg applied for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since April 18, 2007, due to physical impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through his attorney, Peter M. Margolius, Esq., commenced this action on July 1, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 3, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. BACKGROUND

The procedural history may be summarized as follows:

Plaintiff applied for DIB on April 19, 2008, alleging disability beginning on April 18, 2007. (T at 79-82).[1] The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on January 10, 2008, before ALJ Carl Stephan.  (T at 24).  Plaintiff, accompanied by an attorney, appeared and testified.  (T at 26-42).  On January 19, 2008, ALJ Stephan issued a decision denying Plaintiff's application. (T at 14-23).  The ALJ's decision became the Commissioner's final decision on May 1, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff timely commenced this action by filing a Complaint on July 1, 2009. (Docket No. 1).  The Commissioner interposed an Answer on November 19, 2009. (Docket No. 8). Plaintiff filed a Brief in support of the action on December 31, 2009. (Docket No. 11).  The Commissioner filed a Brief in opposition on March 1, 2010. (Docket No. 14).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that judgment be entered in favor of the Commissioner.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 9).

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

    **1.     Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 18, 2007, the alleged onset date. The ALJ concluded that Plaintiff had the following impairments considered "severe" under the Act: right knee pain, status post arthroscopic surgery, obesity, and reactive airway disease. (T at 16).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 17). The ALJ determined that Plaintiff had the residual functional capacity to perform a wide range of light work, with some environmental limitations. (T at 17).

The ALJ concluded that Plaintiff was not able to perform his past relevant work as a truck driver, cast iron molder, game farm laborer, and laborer in concrete. (T at 21).

Considering Plaintiff's age (41 as of the alleged onset date), education (limited), work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. (T at 21-23).

Accordingly, the ALJ determined that Plaintiff had not been under a disability and was not entitled to benefits from the date of alleged onset to the date of the ALJ's decision. (T at 22). As noted above, the ALJ's decision became the Commissioner's final decision on May 1, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff offers two (2) principal arguments in support of his position. First, he contends that the ALJ did not properly develop the record before rejecting the assessment of Plaintiff's treating physician. Second, Plaintiff argues that the Appeals Council erred by refusing to reverse or remand the matter to the ALJ based upon new and material evidence submitted after the ALJ's decision. This Court will address each argument in turn.

#### a. Development of the Record

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel." Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic

6

techniques.").

In this case, Dr. Robert Schneider, Plaintiff's treating physician, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) in May of 2007. In his statement, Dr. Schneider opined that Plaintiff can occasionally lift/carry less than 10 pounds, stand/walk for less than 2 hours in an 8-hour workday, must periodically alternate sitting and standing to relieve pain and discomfort, and has severe limitations in both upper and lower extremities. (T at 158-59). Dr. Schneider further indicated that Plaintiff can never climb, balance, kneel, crouch, crawl, or stoop. (T at 159). He also determined that Plaintiff had significant environmental limitations. (T at 161).

The ALJ gave this assessment "little weight." (T at 20). Specifically, the ALJ noted that there were no objective clinical or laboratory findings to support Dr. Schneider's opinion and that the opinion was contradicted by Dr. Schneider's records, the consultative examiner's report, and Plaintiff's activities of daily living.

Plaintiff argues that the ALJ should have re-contacted Dr. Schneider for further development of the record before rejecting his opinion. This Court finds this argument unavailing and concludes that the ALJ's decision is in accord with applicable law and supported by substantial evidence.

X-rays of Plaintiff's right knee taken on July 24, 2007, were noted to be "unremarkable." (T at 170). Pulmonary function tests taken the same day were within normal limits. (T at 171). There is no indication of muscle atrophy. Plaintiff was not treated by any specialists during the relevant time period. Plaintiff testified that the orthopedic surgeon who performed his knee surgery declined to treat Plaintiff until he lost weight. (T at 36). There is no indication of any referrals or attempts to arrange for

treatment by other specialists. A treatment note from July of 2007 indicated that Plaintiff's knee pain was "not as bad" as it had been and had "resolved." (T at 162). Plaintiff takes ibuprofen on a daily basis to take the "edge off" his pain. (T at 35).

Plaintiff indicated that he tries to go fishing with his cousin once a week (T at 120) and the consultative examiner reported that Plaintiff "enjoys fishing." (T at 167).[3] Plaintiff stated that he cares for his pets (with occasional help from his cousin), prepares meals on a daily basis, attends to his personal needs without assistance, plays cards on the computer, and performs various household chores, including mowing the lawn with a riding tractor. (T at 36-37, 39, 116-118).

Philip Gilly, M.D. performed a consultative examination in July of 2007 and made the following findings: Plaintiff had normal gait, could walk on heels and toes without difficulty, squat full, stance was normal, he used no assistive devices, needed no help changing for exam or getting on and off exam table, and was able to rise from a chair without difficulty. (T at 167). Plaintiff had full range of motion of shoulders, elbows, forearms, and wrists bilaterally. (T at 168). He had full range of motion in his left knee, with the right knee limited to 90 degrees of flexion due to pain. (T at 168). Plaintiff's joints were noted to be stable, with 5/5 strength in upper and lower extremities. (T at 168).

Dr. Gilly assessed Plaintiff as mildly limited for walking, standing, climbing, squatting, or bending. (T at 169). He further opined that Plaintiff should avoid exposure to smoke, dust, and other known respiratory irritants. (T at 169).

---

[3] At the hearing, Plaintiff initially described hunting and fishing as hobbies and testified that he maintained his fishing and hunting licences, but then denied continuing such activities, contradicting his prior statements. (T at 38).

8

A State Agency review consultant opined that Plaintiff could lift/carry 50 pounds occasionally, lift/carry 25 pounds frequently, stand/walk/sit about 6 hours in an 8-hour workday, and push/pull in unlimited amounts. (T at 176). The consultant determined that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (T at 177). The consultant concluded that Plaintiff needed to avoid concentrated exposure to fumes, odors, gases, and poor ventilation, but otherwise had no environmental limitations. (T at 178).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of Social Security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of the examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

As noted above, Plaintiff argues that the ALJ was obligated to re-contact Dr. Schneider before assigning little weight to his assessment. However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in

9

advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (2d Cir.1999)(citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir.1996)); see also Schultz v. Astrue, No. 04-CV-1369, 2008 WL 728925, at *8 (N.D.N.Y. Mar. 18, 2008)("[An] ALJ does not need to attempt to obtain every extant record of the claimant's doctor visits when the information on the record is otherwise sufficient to make a determination, and need not request more detailed information from the treating physician if the physician's report is a sufficient basis on which to conclude that the claimant is not disabled.").

Moreover, "[w]hile the opinions of a treating physician deserve special respect, ... they need not be given controlling weight when they are contradicted by other substantial evidence ...." Veino v. Barnhart, 312 F.3d 578, 588 (2nd Cir.2002); see also Hogue v. Barnhart, No. 03-CV-4963, 2005 WL 1036336, at *14 (S.D.N.Y.2005).

Here, the record before the ALJ was neither incomplete nor ambiguous. The record included Dr. Scheinder's treatment notes and medical source statement, hospital records, x-ray results, pulmonary test results, a consultative examiner's report, a State Agency review consultant's assessment, and statements and testimony from Plaintiff concerning his condition and activities of daily living.

The ALJ is not required to re-contact the treating physician whenever the ALJ finds the physician's assessment in conflict with the medical evidence. Where, as here, the record is complete, the ALJ's task is to resolve the conflict by weighing the evidence at hand. Veino, 312 F.3d at 588 ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."); McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)) ("[A]n ALJ is free ... to choose between properly submitted medical opinions."). Indeed, the ALJ's function in weighing the evidence would be "rendered

10

nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his opinion to the evidence." Rebull v. Massanari, 240 F.Supp.2d 265, 273 (S.D.N.Y.2002).   For these reasons, this Court concludes that it was not necessary for the ALJ to re-contact Dr. Schneider to further develop his opinions and finds that the ALJ's decision not to afford controlling weight to Dr. Schneider's assessment was supported by substantial evidence.

### b. New Evidence

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence."

Shrack v. Astrue, 608 F.Supp.2d 297, 302 (D.Conn.2009).

In this case, Plaintiff submitted a letter from Dr. Schneider, dated February 11, 2008, to the Appeals Council. (T at 189). The Appeals Council determined that this information did not provide a basis for changing the ALJ's determination. (T at 2). This Court finds no error in the Appeals Council's decision. Dr. Schneider's letter consisted of the following three sentences:

> My patient, James Rivenburgh [sic], has chronic degenerative changes in his right knee which are permanent. He will need chronic NSAID therapy and periodic cortisone injections in his knee joint for pain relief. We also recommend a chronic diet and exercise regime for morbid obesity.

(T at 189).

Dr. Schneider's statements are generally probative in the sense that they relate to Plaintiff's condition during the relevant time period. However, they do not materially alter the ALJ's fundamental analysis – specifically, that the limitations assessed by Dr. Schneider are at odds with the underlying medical evidence and contradicted by both the well-supported assessment of the consultative examiner and Plaintiff's activities of daily living. Dr. Schneider does not offer anything new in the way of clinical findings or other objective criteria that might arguably alter the weight the ALJ assigned to Dr. Schneider's assessment. As such, this Court finds no error in the Appeals Council's decision not to remand the matter to the ALJ based upon this new evidence.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating provider, the consultative examiner, and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: October 12, 2010
Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

October 12, 2010

Victor E. Bianchini
United States Magistrate Judge